UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BONNIE L. VOLKLE, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | NO. C11-1881-MJP-JPD <br><br> REPORT AND RECOMMENDATION |

Plaintiff Bonnie L. Volkle appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 53-year-old woman with a high school education and some college. Administrative Record ("AR") at 34-35. Her past work experience includes employment as a construction management assistant, office manager, marketing coordinator, and administrative assistant. AR at 35-37. Plaintiff was last gainfully employed in January 2009. AR at 47.

REPORT AND RECOMMENDATION - 1

On January 28, 2009, she filed an application for DIB, alleging an onset date of January 7, 2009. AR at 122. Plaintiff asserted that she is disabled due to lupus, undifferentiated connective tissue disease ("UCTD"), and orbital pseudotumor. AR at 147.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 67-69, 73-74. Plaintiff requested a hearing which took place on September 16, 2010. AR at 29. On November 15, 2010, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 17-24. After reviewing additional evidence, the Appeals Council denied plaintiff's request for review, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On November 8, 2011, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.  EVALUATING DISABILITY

As the claimant, Ms. Volkle bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On November 15, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since January 7, 2009, the alleged onset date.

3. The claimant has the following severe impairments: undifferentiated connective tissue disease/lupus.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a). She can lift and/or carry 10 pounds occasionally and frequently. She can sit for a total of six hours, and stand and/or walk for a total of two hours, in an eight-hour workday. She can never climb ladders/ropes/scaffolds. She can occasionally climb stairs/ramps and crawl. She can frequently balance, kneel, crouch and stoop. She must avoid concentrated exposure to extreme cold, heat, vibration, and hazards such as machinery and heights.

6. The claimant is capable of performing past relevant work as an administrative assistance and an office manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

|   |   |
|---|---|
| 1 | 7. The claimant has not been under a disability, as defined in the Social Security Act, from January 7, 2009, through the date of this decision. |

AR at 19-24.

## VI. ISSUES ON APPEAL

The principal[2] issues on appeal are:

1. Whether the ALJ erred in evaluating Plaintiff's mental impairments at step two; and

2. Whether the ALJ erred in discounting the lupus questionnaire completed by Plaintiff's treating rheumatologist, Dr. Peter Mohai, M.D.

Dkt. 13 at 1.

## VII. DISCUSSION

A. <u>The ALJ Did Not Err in Evaluating Plaintiff's Mental Impairments at Step Two.</u>

The ALJ found that Plaintiff's related impairments of lupus/UCTD were severe, but that her depression and generalized anxiety disorder were not severe "because they do not cause more than minimal limitation in her ability to perform basic mental work activities." AR at 19-20. The ALJ went on to explain:

> The claimant was diagnosed with a generalized anxiety disorder following a consultative psychological evaluation in May 2009. However, the records evidence fairly normal activities and functioning. She worked on her computer four to five hours a day, five days a week, in addition to reading four hours each day. She was enrolled in an on-line medical billing course. She was able to complete self-care independently. She reported socializing with her husband, neighbors, and friends; and attending church twice a month. Her attention and concentration were generally within expected baseline levels. The examiner opined that the claimant was capable of performing both routine and complex tasks.

---

[2] Though Plaintiff also assigned error to the ALJ's adverse credibility finding in her opening brief, she did not include any discussion of that issue in her opening brief and did not file a reply brief. *See* Dkt. 16 at 2 (discussing Plaintiff's failure to include any argument on this issue in her briefing). Thus, the Court will not address the credibility finding. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("We do not address this finding because Carmickle failed to argue this issue with any specificity in his briefing.").

REPORT AND RECOMMENDATION - 6

> There is no evidence of any worsening of the claimant's mental health condition. To the contrary, in August 2009, she reported that her anxiety was much better.
>
> Although notes from the claimant's rheumatologist and family physician include a diagnosis of depression, there is no further mention of depression in any of the treatment notes or in the consultative report. Nevertheless, even if this is a medically determinable impairment, there is clearly no evidence that it causes more than mild functional limitations in the first three domains of the "paragraph B" criteria. Nor does the evidence indicate that the claimant has experienced any episodes of decompensation.
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation of extended duration in the fourth area, they are nonsevere.

AR at 20 (internal citations omitted). Plaintiff contends that the ALJ erred by ignoring the medical opinions of rheumatologist Peter Mohai, M.D., and a state agency consultative psychologist Brenda Havallana, Ph.D., in finding that her anxiety was nonsevere.

1. <u>Standards for Evaluating Impairments at Step Two.</u>

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims." *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical

diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of her physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is not enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

2. Plaintiff's Anxiety.

The ALJ's decision analyzed the four "paragraph B" criteria to determine whether Plaintiff's anxiety constitutes a severe impairment. As to the first criterion, the ALJ found that Plaintiff's anxiety did not have more than a mild limitation in her activities of daily living, given that she spent 4-5 hours a day working on her computer, spent four hours a day reading, was enrolled in an online course, and completed self-care independently. AR at 20. As to the second criterion, the ALJ found that Plaintiff's anxiety did not pose more than a mild limitation on her social functioning, given that she continued to socialize with her husband, friends, and neighbors, and attended church twice a month. *Id*. As to the third criterion, the ALJ found that because Plaintiff's attention and concentration were within "expected baseline levels," and because she was capable of performing both routine and complex tasks, she did not suffer more than a mild limitation in her concentration, persistence or pace. *Id.* As to the final criterion, the ALJ found no evidence that the Plaintiff had experienced any episodes of decompensation of extended duration. *Id.* Thus, finding that none of the "paragraph B" criteria had been satisfied, the ALJ concluded that the Plaintiff's anxiety was not a severe impairment. *Id*.

Plaintiff argues that the ALJ's conclusions about Plaintiff's activities of daily living and social functioning were erroneous, in light of the evidence that Plaintiff's anxiety prevents her from grocery shopping alone because they are loud and crowded, and because Plaintiff reports that her anxiety disrupts her sleep patterns. *See* AR at 42, 352. But the ALJ specifically explained that she found Plaintiff's description of her anxiety in a grocery store to be non-

credible in light of Plaintiff's other public activities, including church attendance and socializing with friends and neighbors. AR at 22. The ALJ also noted that Plaintiff never reported drowsiness to her medical providers; instead, after Plaintiff complained of difficulty sleeping, her physician increased her medication dosage and she reported at her next visit that her anxiety has been much better. *See* AR 402-06. Thus, it appears Plaintiff's anxiety is responsive to medication, and such an impairment does not support a finding of disability. *See Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

As to Plaintiff's contention that the ALJ erred in relying on the report of psychologist Brenda Havellana, Ph.D., to support her finding that Plaintiff suffered only mild limitations as to concentration, the Court also finds that the ALJ's finding is supported by substantial evidence in the record. Dr. Havellana's notes regarding "concentration" document that when asked to count down by 7's from 100, Plaintiff counted "93, 85, 76, 69, 62." AR at 322. Three times Plaintiff correctly subtracted seven from the previous number. Dr. Havellana also found that Plaintiff "was able to follow a three-step command and did not have difficulty following conversation." *Id.* Finally, Dr. Havellana concluded that the "results of the current evaluation indicate that her ability to follow simple directions and her abstract reasoning were both generally adequate. Attention and concentration varied, but were generally within expected baseline levels." AR at 323. Thus, contrary to Plaintiff's argument, Dr. Havellana's report supports the ALJ's finding with regard to concentration.

For these reasons, the Court finds that the ALJ properly explained her findings, which are supported by substantial evidence in the record.

B.  The ALJ Did not Err in Discounting Dr. Mohai's Lupus Questionnaire.

The ALJ assigned "limited evidentiary weight" to a lupus questionnaire completed by Plaintiff's treating rheumatologist, Dr. Mohai:

> The lupus questionnaire completed by Dr. Mohai in April 2010, which indicates that the claimant is unable to sustain work at any level of exertion or skill level, has similarly been assigned limited evidentiary weight. The checklist assessment lacks any detailed explanation, and is inconsistent with the claimant's treatment records, which reveal a relatively infrequent and conservative course of treatment. For example, a total body scan performed in January 2009 showed only mild degenerative changes of her thoracic spine. In March 2009, the claimant was reportedly feeling 95% better, with a substantial reduction in amount of medication required, and she was walking every morning in a mall. A physical examination performed in June 2009 was entirely normal, and Dr. Mohai noted the following month that the claimant's condition was clinically stable.

AR at 23 (internal citations omitted).

1.  Standards for Reviewing Medical Evidence.

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than

merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

### 2. Dr. Mohai's Lupus Questionnaire.

Dr. Mohai's opinions expressed in the lupus questionnaire were contradicted by state agency medical consultants (AR at 325-46, 390-91) and Dr. Havellana (AR at 319-24). Specifically, Dr. Mohai opined that Plaintiff was unable to sustain work at any skill or exertion level. AR at 472-78. Thus, Dr. Mohai's contradicted opinions could be properly discounted only if the ALJ provided specific and legitimate reasons for doing so. *Reddick*, 157 F.3d at 725.

The ALJ's decision provided a number of reasons for discrediting Dr. Mohai's lupus questionnaire. First, the ALJ noted that the questionnaire lacks any detailed explanation. AR at 23. The questionnaire is primarily a checkbox/multiple-choice form, and Dr. Mohai did not provide any detailed explanations at any point in the form. AR at 472-78. In the final comments section of the form, Dr. Mohai simply wrote "Disabled from all work." AR at 478. The lack of Dr. Mohai's citation to support for his opinions is a legitimate reason for discounting his questionnaire. *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Second, the ALJ found that Dr. Mohai's lupus questionnaire was inconsistent with the other medical evidence of record. AR at 23. In March 2009 and August 2009 visits to Dr. Mohai specifically, Plaintiff had reported feeling much better and being able to walk every morning. *See* AR at 362-63, 402-03. Plaintiff objects to the ALJ's description of her treatment as "relatively infrequent and conservative," AR at 23, but that characterization is not

entirely inconsistent with visits to Dr. Mohai on a monthly basis and good responses to medication. Although the record does contain evidence that Plaintiff sought medical attention on a fairly regular basis for symptoms ranging from eye pain, an ear infection, vomiting and nausea, inflamed gallbladder, to foot pain, not all of Plaintiff's symptoms were linked to her severe impairments, and many of them either resolved on their own or responded well to medication. *See, e.g.*, AR at 352, 359-60, 396, 400, 402. Thus, because Dr. Mohai's opinions contained within the lupus questionnaire are inconsistent with Plaintiff's overall treatment record, the Court concludes that this is a specific and legitimate reason to discount Dr. Mohai's opinions.

Plaintiff argues that if Dr. Mohai's questionnaire inadequately supported his opinions, the ALJ should have contacted Dr. Mohai to seek additional information. *See* Dkt. 13 at 18. But the ALJ would have been obligated to conduct such an investigation only if the report was ambiguous or if the evidence from that provider was insufficient. *See Bayliss*, 427 F.3d at 1217. There is no suggestion that Dr. Mohai's questionnaire is ambiguous, and there was sufficient evidence in the record to inform the ALJ's disability determination. Because the ALJ provided specific and legitimate reasons for discounting Dr. Mohai's lupus questionnaire, and the reasons are supported by substantial evidence in the record, the Court finds that the ALJ did not err in discounting Dr. Mohai's opinions contained in the lupus questionnaire.

//
//
//
//
//
//

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED. A proposed order accompanies this Report and Recommendation.

DATED this 14th day of June, 2012.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge